**In re Ida Mae CLEVELAND, Debtor.**

**Ida Mae CLEVELAND, Objector,**

v.

**FREEDLANDER, INC., the Mortgage People, Respondent.**

**Bankruptcy No. 86–40135–COL.**

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

Nov. 20, 1986.

Linnis Cook, Paul Kaufman, Columbus, Ga., for debtor/objector.

Betty Nappier, Atlanta, Ga., for respondent.

Camille Hope, Macon, Ga., Trustee.

## MEMORANDUM OPINION AND ORDER ON OBJECTION TO PROOF OF CLAIM

JOHN T. LANEY, III, Bankruptcy Judge.

### ORDER

The Objector and Debtor in this case, Ida Mae Cleveland, resides at 3650 Surrey Lane in Columbus. On July 23, 1985, she entered into a loan transaction with Freedlander, Inc., The Mortgage People, the Respondent. In connection with this loan transaction, Objector executed and delivered to Respondent a Promissory Note in the principal sum of $15,350.98 plus interest, payable in 120 monthly installments of $257.15, commencing August 29, 1985. The Note is secured by a Security Deed on the Surrey Lane property. The Note reflects on its face a payment of interest at sixteen percent per annum. The "Itemization of Amount Financed" lists a $2205.00 Prepaid Finance Charge, including $2100.00 in Discount Points. The Discount Points were included in the principal amount of the loan and interest was charged on them. The Federal Truth in Lending Disclosure states the annual percentage rate on the loan as 20.35 percent.

Objector has defaulted on the repayment of the loan. Her last direct monthly payment to Respondent was made November 29, 1985. She filed for relief under Chapter 13 of the United States Bankruptcy Code on March 3, 1986. She has since that time made monthly payments to the Chapter 13 Trustee.

On June 9, 1986, Objector filed her Objection to Proof of Claim. The complaint alleges that Objector owes Respondent only $12,000 and that there are therefore no arrears. Objector's contention is that Respondent committed usury under O.C.G.A. § 7–4–2 and that Respondent forfeited all interest on the loan pursuant to O.C.G.A. § 7–4–10. Respondent contends that Objector owes it $14,946.51 in principal balance and $810.03 in pre-petition arrearages as stated in its Proof of Claim. Both Debt-

or and Respondent moved for Summary Judgment.

The issue before the Court is whether the discount points charged in this loan transaction are usurious under O.C.G.A. § 7-4-2 (Michie 1982, Supp.1986). Section 7-4-2(a)(1) provides that "the parties may establish any rate of interest expressed in simple interest terms as of the date of the evidence of the indebtedness, and charges and any manners of repayment, prepayment, or, subject to the provisions of paragraph (1) of subsection (b) of this Code Section, acceleration, agreed upon in writing by the parties where the principal amount involved is more than $3000.00...." Respondent has complied with the requirement of setting out the rate in simple interest terms.

Section 7-4-2(a)(3) goes on to state that "Amounts paid *or contracted to be paid* as either an origination fee or discount points, or both, on any loan secured by an interest in real estate shall not be considered interest and shall not be taken into consideration in the calculation of interest and shall not be subject to rebate as provided in paragraph (1) of subsection (b) of this Code section." (Emphasis added). The language "amounts paid or contracted to be paid" clearly contemplates that discount points may be financed with the loan. The section also makes it clear that discount points are not interest for purposes of the usury statute.

Discount points are usually a prepaid finance charge. But even if the $2100.00 labeled discount points is actually interest, O.C.G.A. § 7-4-2 does not restrict the interest rate that may be charged so long as it is expressed in simple interest terms and agreed upon in writing. Objector admits in her Brief and Citation of Authority accompanying her Motion for Summary Judgment that, if the discount points are considered interest, they "result in interest being charged at a rate of 20.35% simple interest...." The Truth in Lending Disclosure signed by the Debtor sets out the annual percentage rate in simple interest terms as 20.35 percent.

■ Objector's first argument is that Respondent violated O.C.G.A § 7-4-2 and took "discount points ... into consideration in the calculation of interest" by charging interest on the financed discount points. The legislature expressed no intent to regulate the charging of interest on discount points with this language. It merely states that discount points are not added to the interest in determining what interest rate has been charged. "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." *O.C.G.A. § 1-3-1(a)* (Michie 1982). Prior to the rewriting of the usury section in 1983, the Georgia courts in cases such as *Scheil v. Georgia Federal Savings and Loan Assoc.* allowed discount points to be financed and interest charged on them, as long as the points were included in the interest rate in determining whether the rate was within the usury statute limit. See *Scheil v. Georgia Federal Savings and Loan Assoc.*, 154 Ga. App. 714, 269 S.E.2d 881 (1980). And, as stated previously, the Georgia Code in the language "contracted to be paid" allows discount points to be financed and interest charged thereon. If the General Assembly intended to prohibit the practice of financing discount points by the 1983 changes in the usury statute, the statute as drafted does not so indicate. O.C.G.A. § 7-4-2 on its face permits interest to be charged on discount points. This Court will not distort the plain meaning of the statute.

■ Objector's second argument is that four or five points was the lending industry standard in 1983 at the enactment of the statute, that charging 16 points was not an acceptable practice, and that 16 points are therefore not discount points as the term is used in O.C.G.A. § 7-4-2. This argument also fails to persuade the Court. The legislature expressed no intention to freeze discount points at the 1983 level. Since discount points were usually higher for higher risk loans, what number would points be limited to? If the General Assembly wished to regulate the number discount

points that could be charged, it certainly did not say so. This Court would be reading far too much into Georgia's usury statute if it found a maximum number of discount points that could be charged in this statute. While this means that any number of discount points may be charged, under the current statute any rate of interest may also be charged.

The Court expresses no opinion here as to whether a charge of 16 points is excessive, or whether discount points should be financed and interest charged on them. The Court also recognizes that discount points are not refundable upon acceleration, while interest is. It only finds that these are issues for the state legislature to decide. The interest charged on this loan, even including the discount points, is not usurious by the terms of the Georgia statute. If the General Assembly desires to regulate discount points, it must amend the usury statute and address the issue specifically.

Therefore, Debtor's Objection to Proof of Claim and her Motion for Summary Judgment are hereby denied. Respondent Freedlander's claim is allowed as filed. However, Freedlander's Motion for Summary Judgment, which requests an immediate tender of mortgage payments or relief from the automatic stay upon affidavit of non-payment, is hereby denied. Freedlander will have to bring a separate motion for relief from the stay if the circumstances justify the same.